UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| NICOLE A. JOHNSON,<br>          Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>          Defendant. | )<br>)<br>)<br>)  CAUSE NO.: 4:21-CV-65-JPK<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 9]. Plaintiff Nicole A. Johnson requests that the Court reverse the July 16, 2021 decision of the Administrative Law Judge (ALJ) denying her claims for disability benefits. For the following reasons, the Court grants Plaintiff's request, and remands to the agency for further proceedings.

## PROCEDURAL BACKGROUND

On May 31, 2016, Plaintiff applied for disability benefits and supplemental security income, alleging disability beginning January 15, 2015. Plaintiff's applications were denied initially, on reconsideration, and later by an ALJ. Plaintiff challenged the decision in federal court, and the court reversed the ALJ's decision and remanded the case to the agency for further proceedings. *Johnson v. Saul*, No. 4:19-cv-95-PPS (Nov. 30, 2020) [DE 20]. A second hearing was held on July 13, 2021, with the same ALJ. On July 16, 2021, the ALJ issued an unfavorable decision, making the following findings[1]:

1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

---

[1] These findings correspond to the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 15, 2015 through her date last insured of December 31, 2018.

3. Through the date last insured, the claimant had the following severe impairments: chronic bronchitis; fibromyalgia; and lupus.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift and carry ten pounds occasionally and less than ten pounds frequently. The claimant can sit for six hours and stand and/or walk for two hours for a total of eight hours in a standard workday. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl, but never balance as that term is defined in the *Selected Characteristics of Occupations*. The claimant can never tolerate concentrated exposure to extreme cold, extreme heat, humidity and wetness as well as dust, odors, fumes, and pulmonary irritants. The claimant can never work outdoors in bright sunshine or in bright, flickering lights, such as would be experienced in wielding or cutting metals. The claimant can never work at unprotected heights.[2]

6. Through the date last insured, the claimant was capable of performing past relevant work as an accountant clerk, bank teller, and customer service representative. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 15, 2015, the alleged onset date, through December 31, 2018, the date last insured.

(AR 736-746)[3].

---

[2] As further discussed below, it appears that the ALJ intended to further limit Plaintiff to occasional overhead reaching and frequent fingering. (*See* AR 743). However, those limitations do not appear in the bolded findings.

[3] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

Plaintiff did not file a timely written appeal, so the Appeals Council did not review the decision. Pl. Br. 2. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge

3

between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for benefits, a claimant must establish that she suffers from a "disability," defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

**ANALYSIS**

Plaintiff alleges severe limitations from fibromyalgia, lupus, and bronchitis. At her most recent hearing, Plaintiff testified that she had fevers and nausea almost every day (AR 768); suffered debilitating pain in her joints and back (AR 769); was too weak to lift or open items such as a purse (AR 769); would be out of breath from getting dressed or walking to the bathroom (AR 770-71); could sit for no longer than three minutes (AR 776); and could walk no more than three car lengths at a time (AR 776), among other symptoms.

The ALJ found that Plaintiff's allegations were not supported by the evidence, including the medical opinion evidence, and her daily activities, and that she could do sedentary work with several other limitations. Plaintiff argues that the ALJ did not adhere to SSR 16-3p in assessing her symptom allegations, failed to properly account for her fibromyalgia, and failed to justify the absence of a handling limitation in the RFC. Because the ALJ did not appropriately evaluate the medical evidence and did not provide a "logical bridge" to several conclusions about her complaints of pain, the decision must be reversed.

**I.      Medical Evidence**

Prior to addressing Plaintiff's arguments directly, the Court notes that the ALJ's summary of the medical evidence appears consistent with impermissible "cherry-picking." The record indicates that between the alleged onset date (January 15, 2015) and the date last insured (December 31, 2018), Plaintiff consistently sought treatment for a variety of symptoms related to lupus or fibromyalgia, but the ALJ barely discussed this evidence.

To briefly summarize: in April 2015, Plaintiff reported fatigue, shortness of breath, chest pain, heartburn, nausea, vomiting, diarrhea, and joint pain, among other symptoms, to Dr. Arthur Kaluta, her rheumatologist. (AR 380). Eight days later, she reported that she was "flaring almost

5

every day," with hip pain, back pain "like I have been hit by a truck," nausea, and lightheadedness. (AR 365). Plaintiff made similar reports to Dr. Kakuta over the following three months (AR 377-379). In May 2016, the doctor noted that fibromyalgia was "likely" (AR 374), and that she did not "fulfill the criteria for SLE [lupus][4] but . . . we will try her on Plaquenil" (AR 372), a medication that can treat lupus.[5] In September 2016, the doctor indicated that Plaintiff "did not respond at all" to the Planequil, fibromyalgia presented the majority of the symptoms, and "[lupus] or other related problems are unlikely." (AR 413). Although Plaintiff's specific symptoms varied, the reports to Dr. Kakuta of some combination of nausea, fatigue, myalgia, generalized pain, and swelling continued through September 2017. (*See* AR 411, 413, 525, 526, 668, 684-85). Plaintiff also sought a second opinion about lupus (AR 634), and in December 2017, a second rheumatologist, Dr. Jeremy Schue, indicated that Plaintiff "seems to have lupus." (AR 590, 592-595). Plaintiff's complaints of pain, fatigue, and shortness of breath, among others, continued through the date last insured. (*See* AR 1115-20).

The ALJ described the medical evidence of Plaintiff's lupus and fibromyalgia-related symptoms, prior to the date last insured, as follows:

> The claimant diagnosis of lupus was initially uncertain. The record indicates that the claimant had positive double stranded DNA, but there was no clear cut evidence of lupus. Despite her somewhat uncertain diagnosis, the claimant was started on plaquenil and seems to have responded to this treatment. The claimant's medical providers seem to have accepted a diagnosis of lupus, despite ANA being negative on typical testing. Additionally, the claimant has changed her diet due to lupus, and has actually lost sixty pounds.
>
> In addition to her lupus, the claimant has additional pain and fatigue throughout her body. An EMG and nerve conduction study was negative. X-rays of the claimant's mouth, hips, hands, and cervical spine were also normal. An MRI of the claimant's

---

[4] "Systemic lupus erythematosus ('SLE') is the most common type of lupus." https://www.cdc.gov/lupus/facts/detailed.html (last visited September 28, 2022).

[5] *See* https://www.hopkinslupus.org/lupus-treatment/lupus-medications/antimalarial-drugs/ (last visited September 28, 2022).

> right hand performed on July 14, 2015 did reveal some chronic tenosynovitis of the right hand, but the claimant's impression was of fibromyalgia. Based on these findings, the claimant has been treated for fibromyalgia. The claimant has tried Cymbalta, but was unable to tolerate it.
>
> . . .
>
> Medical records from shortly before her date last insured were not suggestive of disability. At this time, the claimant was complaining of tailbone bone [sic] and fatigue. The claimant was also wheezing, apparently due to bronchitis. Nevertheless, the claimant had no weakness, no restricted motion, and no numbness. The claimant's gait and station were normal.

(AR 740-741, 742 (internal citations omitted))[6].

Although the summary mentioned Plaintiff's "additional pain and fatigue throughout her body," that was the ALJ's only discussion of Plaintiff's pain and fatigue complaints to her doctors between 2015 and 2018, and there is no reference at all to her allegations to clinicians of nausea, vomiting, and lightheadedness. Rather, the ALJ made it seem that Plaintiff was presenting to the doctor in essentially normal condition, by highlighting normal examination findings and ignoring the evidence within those same pages of Plaintiff's reports of pain.

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). And while the "ALJ need not . . . discuss every piece of evidence in the record," the ALJ is prohibited "from ignoring an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)). Remand is required, because the ALJ's lone reference to Plaintiff's "additional pain and fatigue" does not

---

[6] The ALJ also provided a summary of medical evidence specific to Plaintiff's bronchitis (AR 741), as well as the medical evidence from after the date last insured (AR 742).

show how the ALJ considered her pain complaints to the doctors, which could have supported a finding of disability.

The ALJ concluded that the medical evidence showed Plaintiff's impairments "more than minimally limit her," but that she is not disabled. (AR 740). Aside from this conclusory statement, it is unclear *how* this evidence adds up to sedentary work[7], rather than to disability or to some other work limitation. *Lashaun B. v. Saul*, No. 2:19-CV-38, 2019 WL 6112561, at *7 (N.D. Ind. Nov. 18, 2019) ("It was not enough to summarize impairments, then give her conclusion. The ALJ had to explain what limitations those conditions imposed on Plaintiff, and explain why the evidence supported the limit to sedentary work, but no further.").

This case was already remanded once, and the Court considers the updated record and the parties' arguments without reliance on the district court's prior opinion. However, the Court notes that most of the ALJ's discussion excerpted above was repeated almost verbatim within the ALJ's prior decision (*see* AR 16) and was rejected as insufficient by the district court for similar reasons. *See Johnson v. Saul*, No. 4:19-cv-95-PPS (Nov. 30, 2020) [DE 20 at 6-7] ("The record shows that Johnson followed up with Dr. Kaluta [11 times], each time describing multiple severe symptoms. Yet none of this was mentioned by the ALJ . . . In sum, the ALJ cherry-picked evidence that supported his opinion while ignoring substantial evidence to the contrary.") (record citations omitted).

## II.    Subjective Symptoms and Daily Activities

The ALJ's treatment of Plaintiff's subjective symptoms provides a further basis for remand. In evaluating Plaintiff's subjective symptoms, the ALJ follows a two-step process: First,

---

[7] The state agency consultants in this case would have limited Plaintiff to light work. (AR 78, 91). The ALJ found these findings "consistent with the medical record," but stated that he "differed with this opinion slightly, and further limited the claimant to sedentary work." (AR 743). The ALJ did not explain why sedentary work was chosen rather than light work.

8

the ALJ considers whether there is a medically determinable impairment that "could reasonably be expected" to produce the claimant's symptoms. Second, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's ability to work. SSR 16-3p, 2017 WL 5180304 at *3 (October 25, 2017).

In this case, the ALJ determined that Plaintiff's impairments could reasonably have caused her symptoms, but that her statements concerning the effects of these symptoms were "not entirely consistent" with the medical evidence and other evidence. (AR 740, *see also* AR 742 (finding Plaintiff's "allegations of disability not entirely consistent with the record")). The correct standard, which the ALJ recited earlier in the decision (AR 740), is whether the claimant's allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." *See* 20 C.F.R. § 416.929(a). The Court is aware that, in many cases, ALJs use the boilerplate "not entirely consistent" language as "a polite way to say the weight of the evidence did not support all [of the] claims." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). However, the rest of the decision sheds doubt on whether the ALJ applied the appropriate standard in Plaintiff's case.

Plaintiff argues[8] that the ALJ improperly assessed her fibromyalgia symptoms by failing to acknowledge that fibromyalgia symptoms "wax and wane." SSR 12-2p instructs ALJs to consider that "the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days," but the claimant's symptom allegations should still be evaluated under the two-step process described above. SSR 12-2p, 2012 WL 3104869 at *5 (July 25, 2012); *see also Neyhart v. Comm'r of Soc. Sec.*, No. 3:17-CV-00437-MGG, 2018 WL 4659265, at *3

---

[8] Plaintiff first argues that the ALJ "equated" Plaintiff's limited daily activities with full-time work (Pl. Br. 20-22), but the ALJ did not do that. The ALJ simply stated that Plaintiff's "reports as to her daily activities are not entirely consistent" with the record because she was "fully capable of activities like making meals, washing small amounts of dishes, dusting, loading the washer and dryer, driving and shopping." (AR 742 citing AR 190-197, 227-234). Plaintiff also said that her sister-in-law occasionally helped with these tasks (AR 190, 234), which the ALJ did acknowledge (AR 740). Regardless of any dispute about the ALJ's characterization of these activities, the ALJ did not equate them to work.

9

(N.D. Ind. Sept. 28, 2018) (citing sources explaining that "fibromyalgia is an elusive and mysterious disease whose symptoms are entirely subjective" (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

It should be emphasized that Plaintiff alleged she is in severe pain nearly every day. (*See, e.g.*, AR 769 ("majority almost every day, I don't feel good . . . I'm constantly in pain"), 769-770 ("[T]here is no one that would hire me knowing that I'd probably call in six out of seven days a week. I mean, I have my good days, and then I'll pay for it for the next four days.")). The ALJ was required by SSRs 12-2p and 16-3p to assess whether those allegations of almost constant pain were consistent with the objective medical evidence. Moreover, the general fact that symptoms can wax and wane is not itself sufficient to contradict substantial evidence of non-disability. *See Gebauer v. Saul*, 801 F. App'x 404, 410 (7th Cir. 2020).

The ALJ found that although "the claimant[] reports pain . . . the overwhelming majority of the [medical] record indicat[es] that the claimant does not appear to be in acute distress or is only mild distress." (AR 742 (internal citations omitted)). At least to some extent, the findings of "mild" distress could undermine Plaintiff's claim that she is in severe pain most of the time. *See Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (affirming where the ALJ "noted that examining physicians consistently described Schaaf as being in no acute distress, which he found inconsistent with Schaaf experiencing constant high-level pain"). In the ALJ's words, it suggests her complaints are "not entirely consistent" with the medical evidence. However, as described above, this does not preclude disability; even if Plaintiff's testimony was not completely accurate, the ALJ still had to "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [her] ability to work." SSR 16-3p, 2017 WL 5180304 at *3.

This second step of the analysis was lacking. First, the Court is concerned by the breadth of the ALJ's reliance on the clinicians' observations of no acute distress. "Without an explanation of what [the doctor] meant by no acute distress, it cannot be assumed that Plaintiff was pain-free. 'No acute distress' generally means that the patient is conscious, not bleeding profusely, not struggling for breath, and other things of that nature indicating that the patient is not in need of immediate emergency care." *Brenda L. v. Kijakazi*, No. 3:21-CV-859, 2022 WL 2763561, at *8 (N.D. Ind. July 15, 2022).[9] Therefore, an ALJ cannot "just rely on examination notes that found no acute distress," but must rely on other evidence to assess a person's pain level. *Spencer v. Saul*, No. 20-CV-3028, 2021 WL 1199027, at *13-14 (C.D. Ill. Mar. 30, 2021) (listing cases).

The ALJ cited the findings of mild or no acute distress as evidence that Plaintiff's "reports as to her daily activities were not entirely consistent." (AR 742). Many of the notes cited for a finding of no acute distress indicated that Plaintiff was in pain, but the ALJ did not acknowledge those aspects of the notes. (*See*, *e.g.*, AR 578 ("Hypersensitivity to the touch over all examined joint areas," "Diffuse myalgias and joint pain"), 594 (joint pain), 728 ("diffuse bilateral hip pain," "sacral pain"). Ultimately, the ALJ did not explain why these notes contradicted Plaintiff's reports about limited daily activities such as preparing simple meals (AR 192) or washing dishes in "small amounts at a time" (AR 192). *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("minimal daily activities" can be consistent with disabling pain).

---

[9] *See also Tamarra F. v. Kijakazi*, No. 1:21-CV-416, 2022 WL 2286908, at *2-3 (N.D. Ind. June 22, 2022) ("That some of these records noted that Plaintiff did not appear to be in acute distress during an appointment did not contradict [the physician's] findings about limitations caused by chronic pain" (emphasis in original)); *Barnett v. Berryhill*, No. 3:18-CV-072-JD, 2019 WL 1219544, at *5 n. 4 (N.D. Ind. Mar. 15, 2019) ("These records do not provide an explanation for what the medical professionals meant by 'no acute distress,' so that the ALJ could rightfully assume that the notations meant that Barnett did not experience limitations to the degree that he alleged."); *Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015) ("Acute" refers to a disease, health effect, or symptom having a sudden, abrupt onset and a short, but severe, course, as opposed to a chronic condition or symptom having a slow development and a protracted but mild course." (citation omitted)).

The ALJ also failed to consider the cumulative effect of Plaintiff's pain. Plaintiff testified that she could sit for no longer than three minutes and walk for no more than three car lengths. (AR 776). The ALJ specifically found that she could "sit for six hours and stand and/or walk for two hours for a total of eight hours in a standard workday." (AR 739); *see also* 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, *3 (July 2, 1996) (for sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday"); Dictionary of Occupational Titles, App'x C, § IV(c) ("Sedentary work involves sitting most of the time"). The ALJ considered that Plaintiff "indicated that her symptoms are worsened by activity and that she described herself as having marginal ability to sit or walk." (AR 742). He found those allegations inconsistent with Plaintiff's examinations showing normal gait and station, normal coordination, normal muscle strength, and good muscle mass. (AR 742-43). Thus, there was evidence that called into question Plaintiff's most severe allegations about sitting and walking; but the ALJ did not explain how he got from there to the conclusion that Plaintiff could sit for six hours and stand and walk for two hours in an eight-hour day. *See Manns v. Comm'r of Soc. Sec.*, No. 3:20-CV-01040-SLC, 2022 WL 950630, at *7 (N.D. Ind. Mar. 30, 2022) ("The ALJ's observations about Manns's strength [] and sensation . . . are not necessarily inconsistent with disabling chronic pain."); *Ryberg v. Berryhill*, No. 2:17-CV-449-JEM, 2019 WL 912175, at *3-4 (N.D. Ind. Feb. 25, 2019) (having found that physical examinations were "essentially normal," the ALJ "did not explain how she arrived at the conclusion that Plaintiff could perform sedentary work, despite evidence in the record that Plaintiff had difficulty sitting for long periods and that static positions precipitated her pain").

**III.     Fingering and Handling**

Because the case is remanded on other grounds, the Court does not resolve the parties' arguments regarding the manipulative limitations. The ALJ referenced limitations to "occasional

overhead reaching and frequent finger[ing]" (AR 743), but due to an apparent scrivener's error, those were not listed among the bolded RFC findings (AR 739-740). Plaintiff also objects to the lack of a handling restriction. "Handling" generally refers to gross manipulation, *i.e.* with the hands, while "fingering" refers to fine manipulation, with the fingers. *Samuel S. v. Berryhill*, No. 1:18-CV-00990-MJD-SEB, 2019 WL 168437, at *7 (S.D. Ind. Jan. 11, 2019) (describing the distinction and listing cases).[10] It appears the confusion was exacerbated because the ALJ may have conflated the two in questioning to the VE. The ALJ first asked the VE to consider an individual who could "frequently finger with both hands," but included no handling restriction in that question. (AR 779). In the next hypothetical, the ALJ asked: "Now assume the same characteristics as in the same hypothetical, but *instead of frequently handling . . . reduce that to occasionally handling with only the dominant right hand; still frequent with the non-dominant hand.*" (AR 781) (emphasis added). On remand, the ALJ must consider any appropriate handling restriction separately from any fingering restriction.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 9] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 28th day of September, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT

---

[10] *See also* Bureau of Labor Statistics, *Gross and fine manipulation*, https://www.bls.gov/ors/factsheet/pdf/gross-and-fine-manipulation.pdf ("Gross manipulation is defined as seizing, holding, grasping, turning, or otherwise working with hand(s) . . . Fine manipulation is defined as picking, pinching, touching or otherwise working primarily with fingers") (last visited September 28, 2022).